UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHANNON SMITH AND
MICHELLE SMITH

      Plaintiffs,                 Case No.: 8:20-cv-00874

v.

PENNYMAC LOAN SERVICES, LLC

      Defendant.

_____/

## COMPLAINT AND JURY DEMAND

**COMES NOW** the Plaintiffs, Shannon Smith and Michelle Smith, by and through the undersigned counsel, and file this Complaint and Jury Demand against the Defendant, PennyMac Loan Services, LLC, and would show:

## INTRODUCTION

This action arises out of the facts and circumstances surrounding the collection of an alleged consumer debt. Plaintiffs bring the action for statutory damages and actual damages against the Defendant, as well as attorney's fees and the costs of litigation for the Defendant's violations of the Florida Consumer Collection Practices Act, Title XXXIII, Chapter 559, Part VI, Florida Statutes ("FCCPA"), and violations of the Telephone Consumer Practices Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). These laws prevent creditors and debt collectors from *inter alia,* engaging in abusive, unfair and deceptive debt collection practices, as well as regulate the type of telephone equipment organizations may use to contact consumers for debt collection purposes.

## JURISDICTION, VENUE & PARTIES

1.      Jurisdiction of this Court arises under 28 United States Code, Section 1331, as well as pursuant to the TCPA, 47 United States Code, Section 227 *et seq*.  Supplemental jurisdiction exists for the FCCPA claims pursuant to 28 United States Code, Section 1367.

2.      Defendant is subject to the jurisdiction of this Court as Defendant regularly transacts business in this District and the events described herein occur in this District.

3.      Venue is proper in this District as the acts and transactions described herein occur in this District.

4.      At all material times herein, Plaintiffs are  natural persons residing in Hernando County, Florida.

5.      At all material times herein, PennyMac Loan Services, LLC ("PennyMac") is a foreign limited liability company existing under the laws of the state of Delaware, with its principal place of business located at 3043 Townsgate Rd., Suite 200, Westlake Village, CA 91361.

## TCPA STATUTORY STRUCTURE

6.      Congress enacted the TCPA to "protect the privacy interests" of consumers in response to the "increasing number of consumer complaints" made to both residential and wireless phones.[1]

7.      The United States Supreme Court has recognized a citizen's home as "the last citadel of the tired, the weary, and the sick," *Gregory v. Chicago*, 394 U.S. 111,

---

[1] Senate Report No. 102-178, October 8, 1991, 1991 U.S.C.C.A.N. 1968; *Id*. at 1969; *see, also* PL 102–243, December 20, 1991, 105 Stat 2394.

125 (1969), and has noted that "[p]reserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value." *Carey v. Brown,* 447 U.S. 455, 471(1980).

8.      The TCPA defines an automated telephone dialing system ("ATDS") as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers". *See* 47 U.S.C. § 227(a)(1).

9.      The Federal Communications Commission ("FCC"), which Congress vested with authority to prescribe regulations implementing the TCPA's requirements, has interpreted an ATDS as "cover[ing] any equipment that has the specified capacity to generate numbers and dial them without human intervention, regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In re the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, 14017 (2003).

10.      The TCPA specifically prohibits the use of an ATDS to contact consumers on their cellular phones without the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

11.      The TCPA also specifically prohibits the use of pre-recorded voice messages in telephone calls to cellular phones without the called party's express prior consent. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

12.      "Prior express consent" may be revoked "using any reasonable method including orally or in writing." *See In re the Matter of Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991,* Declaratory Ruling and Order, FCC 15–72 (CG Dkt. No. 02–278, WC Dkt. No. 07–135) at ¶ 64 (July 10, 2015). Even oral instructions to cease calls effectively revokes any prior consent the caller claims they may have had. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13.     Under the TCPA, any person who fails to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to any actual monetary loss from such a violation, or to receive $500.00 in damages for each such violation, whichever is greater.

14.     Under the TCPA, any person who willfully fails to comply with any requirement imposed with respect to any consumer may be required to pay the consumer an amount equal to not more than 3 times the amount of the consumer is entitled to receive for each such violation, or $1,500.00 in damages for each such violation.

## FCCPA STATUTORY STRUCTURE

15.     The FCCPA is a state consumer protection statute, modeled after the FDCPA, a federal statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C., Sections 1692(a) and (e); Fla. Stat., Sections 559.55 and 559.77(5).

16.     The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or who "regularly collects or attempts to collect,

directly or indirectly, debts owed or asserted to be owed or due to another," and prohibits any such debt collector or person from engaging in particular conduct in connection with collecting consumer debts.   15 U.S.C., Section 1692(a)(6); Florida Statutes, Section 559.55(5).

17.    Specifically, the FCCPA prohibits certain unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*." Fla. Stat., Section 559.55(2) (emphasis added).

18.    For example, the FDCPA prohibits a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a consumer debt, or from using false, deceptive, or misleading representations or means in connection with the collection of any consumer debt.  *See* 15 U.S.C., Sections 1692(d)-(e).

19.    Similarly, the FCCPA prohibits a person from collecting consumer debt by communicating with the consumer in a manner that can be expected to harass or abuse the consumer debtor, and also prohibits a person from claiming, attempting, or threatening to enforce a consumer debt "when such person knows that the debt is not legitimate" or by asserting a legal right that does not exist.  *See* Fla. Stat., Sections 559.72(7) and 559.72(9).

## GENERAL ALLEGATIONS

20.    At all material times herein, Plaintiffs are "debtor(s)" or "consumer(s)" as defined by Florida Statutes, Section 559.55(8).

21.     At all material times herein, PennyMac, itself and through its affiliates, regularly attempts to collect debts, including but not limited to, alleged balances due from Plaintiffs on a mortgage loan.

22.     At all material times herein, PennyMac is a "person" subject to Florida Statutes Section 559.72.   *See* Florida Statutes, Section 559.55(3); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

23.     At all material times herein, PennyMac is a "debt collector" as defined by Florida Statutes, Section 559.55(7).

24.     At all material times herein, PennyMac uses interstate mail while engaging in a business, the principal purpose of which is the collection of consumer debts.

25.     At all material times herein, PennyMac attempts to collect a debt, including but not limited to, an alleged balance on the Account.

26.     At all material times herein, PennyMac is a "consumer collection agency" within the definition established by Florida Statutes, Section 559.55(3) in that it is a business entity engaged in the business of soliciting consumer debts for collection or of collecting consumer debts.

27.     At all material times herein, PennyMac attempted to collect debts, including but not limited to, alleged balances due from Plaintiffs on a mortgage loan, referenced by account number ending - 3981, (herein, the "Account" or "Debt")

28.     At all material times herein, the alleged balance due on the Account is a consumer debt, an obligation resulting from a transaction for goods or services incurred primarily for personal, household, or family use.

29.     At all material times herein, PennyMac's conduct regarding the Account complained of below—including furnishing the alleged Account information to consumer reporting agencies—qualifies as "communication" as defined by Florida Statutes, Section 559.55(2).

30.     At all material times herein, PennyMac used, controlled and/or operated an "automatic telephone dialing system" as defined by the TCPA, 47 United States Code, Section 227(a)(1); which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator to dial such numbers.

31.     At all material times herein, Defendant acted themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

32.     All necessary conditions precedent to the filing of this action occurred, or Defendant waived the same.

## FACTUAL ALLEGATIONS

33.     On March 15, 2016, a Mortgage was recorded against Plaintiffs' real estate property by virtue of a promissory note dated March 9, 2016 (the "debt").

34.     The subject debt was incurred primarily for personal, household or family use.  More specifically, the Debt was used to obtain Plaintiffs' homestead residence.

35.     On November 1, 2017, the loan was treated as a defaulted loan.

36.     On or about October 19, 2018, PennyMac initiated a foreclosure action against Plaintiffs styled *PennyMac Loan Services, LLC. v. Smith, et al.,* Case No. 2019-CA-1247 (Fifth Judicial Circuit, Hernando County, Florida) (the "Foreclosure Action").

37.     The complaint filed in the Foreclosure Action requested the state court to (i) determine the amounts due under the promissory note and mortgage; (ii) order the clerk to sell the property; and (iii) retain jurisdiction in order to enter a deficiency judgment if the proceeds of the sale are insufficient to cover the amount due.

38.     Shortly, thereafter, Plaintiffs retained legal counsel, Andrew Lyons, Esq., to represent them with respect to the debt and defend the Foreclosure Action and related debt collection.

39.     On or about April 5, 2019, Andrew Lyons, Esq., filed his appearance as counsel on behalf of Plaintiffs with the relevant court and PennyMac's counsel.

40.     On April 5, 2019, Andrew Lyons, Esq., sent PennyMac a written Demand for Verification of Debt and Notice to Cease and Desist ("Verification") communication with Plaintiffs.  Please see attached a true and correct copy of Plaintiffs' Verification labeled as **Composite Exhibit "A."**

41.     The Verification specifically stated that "[i]n addition to the cessation of all debt collection communications, [borrower] hereby gives notice of withdraw of any prior consent to be contacted for any purpose at home, at work, by cellular phone, by mail, by email or otherwise."

42.     Plaintiffs have been continuously represented by legal counsel with respect to the debt from at least April 5, 2019, to the present and PennyMac has always been aware of Plaintiffs' representation by legal counsel during this period.

43.     Notwithstanding PennyMac's actual knowledge of Plaintiffs having retained legal counsel with respect to the Debt, PennyMac contacted Plaintiffs directly on multiple occasions for the purposes of collecting on the alleged consumer Debt.

44.     On July 8, 2019, Andrew Lyons, Esq., negotiated and resolved the Foreclosure Action.

45.     On or about August 13, 2019, Plaintiffs and PennyMac entered a Stipulation to Entry of Final Judgment of Mortgage Foreclosure in the Foreclosure Action (hereinafter "Stipulation").

46.     The Stipulation expressly stated that PennyMac agreed to "forgive that portion of the debt owed under the loan that is not ultimately recovered through the foreclosure and/or Deed-in-Lieu of Foreclosure process (the "Deficiency").

47.     On August 20, 2019, PennyMac contacted Plaintiffs for the purposes of collecting on the alleged debt via mail, by requesting that Plaintiffs pay an Amount Due of $60,468.43 or an accelerated amount of $385,247.77, in direct contravention of the notice of legal representation and waiver of any balance on the Debt, and in direct contravention of the notice of legal representation.

48.     The immediately aforementioned communication stated that the Debt was severely delinquent, failure to cure the default may result in expenses and foreclosure.

49.     The immediately aforementioned communication further stated that "[t]his is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose."

50.     On September 17, 2019, PennyMac contacted Plaintiffs for the purposes of collecting on the alleged debt via mail, by requesting that Plaintiffs pay an Amount Due of $63,073.59 or an accelerated amount of $386,447.15 by October 1, 2019, and in direct contravention of the notice of legal representation and waiver of any balance on the Debt.

51.     The immediately aforementioned communication stated that the Debt was severely delinquent, failure to cure the default may result in expenses and foreclosure.

52.     The immediately aforementioned communication further stated that "[t]his is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose."

53.     On October 19, 2019, PennyMac contacted Plaintiffs for the purposes of collecting on the alleged debt via mail, by requesting that Plaintiffs pay an Amount Due of $65,568.75, and in direct contravention of the notice of legal representation and waiver of any balance on the Debt.

54.     The immediately aforementioned communication stated that the Debt was severely delinquent, failure to cure the default may result in expenses and foreclosure.

55.     The immediately aforementioned communication further stated that "[t]his is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose."

56.     On November 16, 2019, PennyMac contacted Plaintiffs for the purposes of collecting on the alleged debt via mail, by requesting that Plaintiffs pay an Amount Due of $68,033.91 and an accelerated amount of $388,842.33, and in direct contravention of the notice of legal representation and waiver of any balance on the Debt.

57.     The immediately aforementioned communication stated that the Debt was severely delinquent, failure to cure the default may result in expenses and foreclosure.

58.     The immediately aforementioned communication further stated that "[t]his is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose."

59.     On December 16, 2019, PennyMac contacted Plaintiffs directly for the purposes of collecting on the alleged debt via mail, by requesting that Plaintiffs pay an Amount Due of $70,704.07 or an accelerated amount of $390,282.78, in direct contravention of the notice of legal representation and waiver of any balance on the Debt.

60.     The immediately aforementioned communication stated that the Debt was severely delinquent, failure to cure the default may result in expenses and foreclosure.

61.     The immediately aforementioned communication further stated that "[t]his is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose."

62.     On or about December 28, 2019, PennyMac contacted Plaintiffs directly for the purposes of collecting on the alleged debt via email, in direct contravention of the notice of legal representation and waiver of any balance on the Debt.

63.     The immediately aforementioned communication further stated that "[t]his is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose."

64.     On January 16, 2020, PennyMac contacted Plaintiffs directly for the purposes of collecting on the alleged debt via mail, by requesting that Plaintiffs pay an

Amount Due of $73,884.23 or an accelerated amount of $398,839.56, and in direct contravention of the notice of legal representation and waiver of any balance on the Debt.

65.     The immediately aforementioned communication stated that the Debt was severely delinquent, failure to cure the default may result in expenses and foreclosure.

66.     The immediately aforementioned communication further stated that "[t]his is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose."

67.     On or about January 21, 2020, PennyMac contacted Plaintiffs directly for the purposes of collecting the alleged debt via mail, by sending communications directed towards "resolv[ing] your delinquency issues," and in direct contravention of the notice of legal representation and waiver of any balance on the Debt.

68.     The immediately aforementioned communication further offered five options for resolving the Debt or bringing the Debt current, in direct contravention of the notice of legal representation and waiver of any balance on the Debt.

69.     On or about January 27, 2020, PennyMac contacted Plaintiffs directly for the purposes of collecting on the alleged debt via email, and in direct contravention of the notice of legal representation and waiver of any balance on the Debt.

70.     The immediately aforementioned communication further stated that "[t]his is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose."

71.     On or about January 28, 2020, with undersigned counsel's assistance, Plaintiffs sent two letters to Defendant disputing the information reported on Plaintiffs'

credit reports (hereinafter, "Dispute Letters").  Please see attached a true and correct copy of Plaintiffs' Dispute Letters and relevant enclosures, labeled as **Composite Exhibit "B"**.

72.     The Dispute Letters were on letterhead, included legal counsel's name, address and contact information.

73.     On or about February 14, 2020, PennyMac contacted Plaintiffs directly via mail by sending a written communication acknowledging Plaintiffs' "inquiry".

74.     The credit reporting was later corrected as a result of the Dispute Letters.

75.     Plaintiff, Michelle Smith is the owner, regular user, and possessor of cellular telephone number 352-XXX-5936 (hereinafter, "Cellular Telephone").

76.     At no time herein did PennyMac have prior express consent to contact Plaintiffs on her Cellular Telephone using an automated dialing system or artificial pre-recorded voice.

77.     PennyMac, and its representatives, agents, employees, or assigns have telephoned Plaintiffs' Cellular Telephone on numerous occasions for the purposes of collecting on the alleged Debt without the appropriate consent and despite possessing knowledge that Plaintiffs are  represented by counsel with regard to the Debt.

78.     PennyMac repeatedly used an automatic telephone dialing system to call Plaintiffs' Cellular Telephone in an attempt to collect on the alleged Debt, and without Plaintiffs' prior express consent.

79.     At all times material hereto, to the extent PennyMac contends that it had consent to contact Plaintiff on her Cellular Telephone, any such consent was revoked for PennyMac to make autodialed Debt collection calls the moment PennyMac was advised of

Plaintiffs' legal representation with respect to the Debt through (i) Plaintiffs' Notice of Appearance dated April 5, 2019; (ii) Verification dated April 5, 2019; and (iii) Dispute Letters dated January 28, 2020.

80.     Notwithstanding Plaintiffs having retained legal counsel with respect to the Debt and each Defendant having notice of the same, having received specific requests to cease and desist all communications, and the balance of the Debt having been waived as part of the Stipulation,   PennyMac has willfully and knowingly continued to contact Plaintiffs directly and on multiple occasions, using an automatic telephone dialing system to make calls to her Cellular Telephone in an attempt to collect the waived Debt.

81.     On or about December 18, 2019 at approximately 2:25 p.m. EST, PennyMac's employee or representative directly called Plaintiffs on her Cellular Telephone using an automated dialing system in an attempt to collect the Debt.  PennyMac placed the phone call from telephone number 866-599-3409.

82.     The immediately aforementioned call, as well as each of the subsequent calls went to voicemail wherein Plaintiffs received the same automated or pre-recorded message that said the following:

> Hello, this is PennyMac loan services, your mortgage company. We are calling to discuss the status of your account. Please return our call at 866-599-3409, between the hours of 6am and 6pm Pacific Time, Monday through Friday, or 7am to 11am Pacific Time on Saturday. We look forward to speaking with you soon.

83.     On or about December 20, 2019 at approximately 3:13 p.m. EST, PennyMac's employee or representative directly called Plaintiff on her Cellular Telephone using an automated dialing system in an attempt to collect the Debt.  PennyMac placed the phone call from telephone number 866-599-3409.

84.     On or about December 23, 2019 at approximately 11:46 a.m. EST, PennyMac's employee or representative directly called Plaintiff on her Cellular Telephone using an automated dialing system in an attempt to collect the Debt.  PennyMac placed the phone call from telephone number 866-599-3409.

85.     On or about December 26, 2019 at approximately 4:43 p.m. EST, PennyMac's employee or representative directly called Plaintiff on her Cellular Telephone using an automated dialing system in an attempt to collect the Debt.  PennyMac placed the phone call from telephone number 866-599-3409.

86.     On or about December 28, 2019 at approximately 1:26 p.m. EST, PennyMac's employee or representative directly called Plaintiff on her Cellular Telephone using an automated dialing system in an attempt to collect the Debt.  PennyMac placed the phone call from telephone number 866-599-3409.

87.     On or about December 30, 2019 at approximately 7:00 p.m. EST, PennyMac's employee or representative directly called Plaintiff on her Cellular Telephone using an automated dialing system in an attempt to collect the Debt.  PennyMac placed the phone call from telephone number 866-599-3409.

88.     On or about January 6, 2020 at approximately 7:11 p.m. and 7:41 p.m. EST, PennyMac's employee or representative directly called Plaintiff on her Cellular Telephone using an automated dialing system in an attempt to collect the Debt.  PennyMac placed the phone call from telephone number 866-599-3409.

89.     On or about January 9, 2020 at approximately 3:23 p.m. EST, PennyMac's employee or representative directly called Plaintiff on her Cellular Telephone using an

automated dialing system in an attempt to collect the Debt.  PennyMac placed the phone call from telephone number 866-599-3409.

90.     On or about January 13, 2020 at approximately 2:16 p.m. EST, PennyMac's employee or representative directly called Plaintiff on her Cellular Telephone using an automated dialing system in an attempt to collect the Debt.  PennyMac placed the phone call from telephone number 866-599-3409.

91.     On or about January 16, 2020 at approximately 12:52 p.m. EST, PennyMac's employee or representative directly called Plaintiff on her Cellular Telephone using an automated dialing system in an attempt to collect the Debt.  PennyMac placed the phone call from telephone number 866-599-3409.

92.     On or about January 20, 2020 at approximately 2:33 p.m. EST, PennyMac's employee or representative directly called Plaintiff on her Cellular Telephone using an automated dialing system in an attempt to collect the Debt.  PennyMac placed the phone call from telephone number 866-599-3409.

93.     This is merely a sampling of the calls Plaintiffs received, as Plaintiffs have not been able to record the specifics of each and every call Defendant made to Plaintiffs on account of their work and personal commitments, and on account of the continued and increasing stress associated with the barrage of harassing debt collection calls.

94.     Notwithstanding Plaintiffs having retained legal counsel with respect to the Debt and each Defendant having notice of the same, having received specific requests to cease and desist all communications, and the Debt having been waived, PennyMac has willfully and knowingly continued to contact Plaintiffs directly and on multiple occasions,

using an automatic telephone dialing system to make calls to her Cellular Telephone in an attempt to collect the waived Debt.

95.     Plaintiffs have retained the law firm of The Lyons Law Group, P.A. for the purpose of pursuing the matter against the Defendant and is obligated to pay a reasonable fee for their services.

96.     As a result of Defendant's actions, Plaintiffs have suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite representation by legal counsel, requests that communications cease, and a waiver of the Debt; that Plaintiffs must endure PennyMac's continued unlawful continued debt collection attempts.

97.     The FCCPA, Section 559.77, provides for the award of up to $1,000 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiffs, should Plaintiffs prevail in this matter against PennyMac.

98.     United States Code, Title 47, Section 227(b)(3) provides for the award of $500.00 or actual damages, whichever is greater, for each telephone call made using any automatic telephone dialing system, a predictive telephone dialing system, or an artificial or pre-recorded voice to Plaintiffs' Cellular Telephone in violation of the TCPA of the regulations proscribed thereunder.

99.     Additionally, the TCPA Section 227(b)(3) allows the trial court to increase the damages up to three times, or $1,500.00, for each telephone call made using any automatic telephone dialing system, predictive telephone dialing system, or artificial or

prerecorded voice to Plaintiffs' Cellular Telephone in willful or knowing violation of the TCPA or the regulations proscribed thereunder.

100.    At all material times herein, it would have been possible for Defendant to avoid violating the terms of the FCCPA and the TCPA.

101.    Upon information and belief, based upon the aforementioned allegations, Defendant's telephone calls made to Plaintiffs' Cellular Telephone using an automatic dialing system or an artificial or pre-recorded voice were made in willful and knowing violation of the TCPA.

**COUNT ONE:**
**UNLAWFUL DEBT COLLECTION PRACTICE—**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(7)**

Plaintiffs re-allege paragraphs one (1) through one hundred one (101) as if fully restated herein and further state as follows:

102.    Defendant is subject to, and violated the provisions of, Florida Statutes, Section 559.55(7) by collecting a consumer Debt from Plaintiffs through means which can reasonably be expected to abuse or harass Plaintiffs.

103.    Specifically, Defendant had actual knowledge of Plaintiffs' representation by legal counsel with respect to the Debt and the Stipulation which waived any balance and right to enforce the Debt in personam.

104.    Despite the above referenced knowledge, PennyMac continued to communicate directly with Plaintiffs no less than eight times by mail, once by email, and twelve times by phone within the past two years to collect on the Debt despite the fact that any balance on the Debt was waived.

105.    Despite the above referenced knowledge, PennyMac continued to communicate directly with Plaintiffs by calling her Cellular Telephone without prior express consent to do so, no less than twenty-one times since August 13, 2019, to collect on the  Debt despite the fact that the Debt was waived.

106.    PennyMac made each of the aforementioned communications and phone calls in an attempt to abuse and harass Plaintiffs into believing that despite Plaintiffs having retained legal counsel with respect to the Debt, despite Defendant having waived any balance on the Debt, and despite PennyMac lacking Plaintiffs' prior express consent to call her Cellular Telephone using an automated telephone dialing system, that Defendant could and would continue its Debt collection attempts until Plaintiffs satisfied the waived Debt.

107.    Defendant's conduct served no purpose other than to annoy and harass Plaintiffs into paying the discharged Debt, wherein Plaintiffs had no in personam liability with respect to the Account.

108.    Defendant's willful and flagrant violation of, *inter alia*, the Florida Consumer Collection Practices Act as a means to collect the Debt constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

109.    As a direct and proximate result of each Defendant's actions, Plaintiffs sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**<u>VIOLATION OF FLORIDA STATUTES, SECTION 559.72(9)</u>**

Plaintiffs re-allege paragraphs one (1) through one hundred one (101) as if fully restated herein and further state as follows:

110.    Defendant is subject to, and violated the provisions of, Florida Statues, Section 559.72(9), by attempting to collect the Debt with knowledge that the alleged Debt is not legitimate or by asserting the existence of some legal right when Defendant knows that the right does not exist.

111.    Specifically, Defendant possessed actual knowledge of the Stipulation which waived any balance on the Debt as well as any right to enforce the Debt in personam against Plaintiffs.

112.    Defendant has actual knowledge that it has no right to collect the waived portion of the Debt from Plaintiffs.

113.    Despite its actual knowledge that the Debt was no longer personally enforceable, PennyMac continued to attempt to collect the Debt directly from Plaintiffs by contacting Plaintiffs no less than eight times by mail, once by email, and twelve times by phone since August 13, 2019, all done in reckless disregard of Plaintiffs' right to be free from illegitimate, unlawful Debt collection attempts.

114.    In sum, during the course of Defendant's attempts to collect the Debt, it knowingly and falsely asserted that the Debt was legitimate, and falsely asserted that it still had the right to collect the Debt directly from Plaintiffs despite possessing actual knowledge of the Stipulation which waived any balance owed on the Debt as well as Defendant's in personam rights.

115.    As a direct and proximate result of Defendant's actions, Plaintiffs sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT THREE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(18)**

Plaintiffs re-allege paragraphs one (1) through one hundred one (101) as if fully restated herein and further states as follows:

116.    Defendant is subject to, and violated the provisions of, Florida Statues, Section 559.72(18), by communicating with a debtor when Defendant had actual knowledge that Plaintiffs are represented by legal counsel with respect to the Debt.

117.    Specifically, Defendant received (i) Plaintiffs' Notice of Appearance dated April 5, 2019; (ii) Verification dated April 5, 2019; and (iii) Dispute Letters dated January 28, 2020.

118.    All of the aforementioned documents provided Defendant with actual knowledge of Plaintiffs' legal representation with respect to the Debt and provided legal counsel's contact information.

119.    Despite Defendant's actual knowledge of Plaintiffs' representation by legal counsel with respect to the Debt, PennyMac continued to attempt to collect the Debt directly from Plaintiffs by contacting Plaintiffs no less than eight times by mail, once by email, and twelve times by phone within the past two years, in an attempt to collect the Debt, all done in reckless disregard of Plaintiffs' right to be free from illegitimate Debt collection attempts.

120.    As a direct and proximate result of Defendant's actions, Plaintiffs sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT FOUR:**
**TELEPHONE CONSUMER PROTECTIVE ACTION –**
**VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)**

Plaintiffs re-allege paragraphs one (1) through one hundred one (101) as if fully restated herein and further state as follows:

121.    PennyMac is subject to, and has violated the provisions of, 47 United States Code, Section 227(b)(1)(A) by using an automatic telephone dialing system, a predictive telephone dialing system, or an artificial or pre-recorded voice to make calls to a telephone number assigned to a cellular telephone service without Plaintiffs' prior express consent.

122.    At no time did PennyMac have Plaintiffs' prior express consent to make Debt collection calls to Plaintiffs on the Cellular Telephone.

123.    Further, if PennyMac contends it had such consent, such consent was revoked as a matter of law when PennyMac received: (i) notice of legal counsel's representation of Plaintiffs with respect to the Debt; (ii) the Verification; and (iii) the Stipulation.

124.    Additionally, if PennyMac contends these phone calls were made for "information purposes only," they still lacked the required express consent necessary to make such informational calls to Plaintiffs' Cellular Telephone using an ATDS, a PTDS, or an APV.

125.    Despite lacking Plaintiffs' prior express consent, PennyMac made no less than twelve Debt collection phone calls to Plaintiffs' Cellular Telephone within the past four years using an ATDS, a PTDS, or an APV.

126.    The telephone calls made by PennyMac, complained of herein, are the result

of a repeated willful and knowing violation of the TCPA.

127.   As a direct and proximate result of PennyMac's conduct, Plaintiffs have suffered:

    a.   The periodic loss of his cellular phone service;

    b.   Lost material costs associated with the use of peak time cellular phone minutes;

    c.   Stress, anxiety, loss of sleep, and deterioration of relationships, both personal and professional, as a result of the repeated willful and knowing Debt collection calls placed in violation of the TCPA to collect the waived Debt;

    d.   Statutory damages; and

    e.   The expenditure of costs and attorney's fees associated with the prosecution of this matter.

## COUNT FIVE:
## TELEPHONE CONSUMER PROTECTIVE ACTION –
## <u>VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)</u>

Plaintiffs re-allege paragraphs one (1) through one hundred one (101) as if fully restated herein and further states as follows:

128.   The conduct of PennyMac complained of herein, is the result of a repeated willful and knowing violation of the TCPA.

129.   More specifically, as prior express consent never existed or was revoked prior to PennyMac's placement of calls to Plaintiffs' Cellular Telephone, and PennyMac is fully aware of the TCPA and its restrictions, PennyMac's calls constitute numerous and

multiple knowing and/or willful violations of the TCPA.

130.    PennyMac also knows that it did not, and has not, reached out to Plaintiffs to independently obtain Plaintiffs' prior express consent—oral, written or otherwise—to call Plaintiffs' Cellular Telephone using an ATDS, a PTDS and/or an APV.

131.    PennyMac was also undisputedly aware of Plaintiffs' representation of counsel with respect to the alleged Debt, as well as had knowledge the Debt and any in personam rights were waived, yet knowingly and consciously made the Debt collection calls to Plaintiffs' Cellular Telephone anyway.

132.    PennyMac is also fully aware of the TCPA and its restrictions and, as such, PennyMac's calls constitute numerous and multiple knowing and/or willful violations of the TCPA.

133.    As a result of PennyMac's knowing and/or willful violations of the TCPA, Plaintiffs are entitled to an award of treble statutory damages, up to $1,500.00, for each and every violation, as alleged above, pursuant to 47 United States Code, Section 227(b)(3)(B) and 47 United States Code, Section 227 (b)(3)(C).

134.    Plaintiffs are also entitled to and seek injunctive relief enjoining PennyMac from further violations of the TCPA.

## **PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendant's conduct, Plaintiffs respectfully requests an entry of:

a.    Judgment against PennyMac declaring that PennyMac violated the FCCPA  and the TCPA;

b.      Judgment against PennyMac for maximum statutory damages for the violations of the FCCPA;

c.      Judgment against PennyMac enjoining them from engaging in further conduct in violation of the FCCPA;

d.      Judgment against PennyMac for statutory damages in the amount of $500.00 for each of Defendant's telephone calls that violated the TCPA;

e.      Judgment against PennyMac for treble damages in the amount of up to $1,500.00 for each of Defendant's telephone calls that violated the TCPA for which Defendant acted knowingly and/or willfully;

f.      Actual damages in an amount to be determined at trial;

g.      Compensatory damages in an amount to be determined at trial;

h.      Punitive damages the FCCPA in an amount to be determined at trial;

i.      An award of attorneys' fees and costs; and

j.      Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiffs hereby give notice to Defendant and demands that Defendant and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**THE LYONS LAW GROUP, P.A.**

/s/ *Rebbecca A. Goodall*
Andrew M. Lyons, Esq.
Florida Bar No.:  0011288
Rebbecca A. Goodall, Esq.
Florida Bar No.:  0115344
4103 Little Road
New Port Richey, FL  34655
(727) 375-8900; (727) 375-2334 (fax)
rgoodall@lyonslawgroup.com
andy@lyonslawgroup.com
Email Service:
pleadings@lyonslawgroup.com
Attorneys for Plaintiffs,
*Shannon Smith and Michelle Smith*